James W. MARTIN and Edith Martin,
Husband and Wife, Plaintiffs,

v.

MASCO INDUSTRIES EMPLOYEES'
BENEFIT PLAN, Defendant.

Civ. A. No. 89–125 Erie.

United States District Court,
W.D. Pennsylvania.

Sept. 27, 1990.

Vernon D. Roof, Ridgway, Pa., for plaintiffs.

Daniel E. Wille, Reed Smith Shaw & McClay, Pittsburgh, Pa., for defendant.

## MEMORANDUM

MENCER, District Judge.

This case arises from the refusal of defendant Masco Industries Employee Benefit Plan to reimburse plaintiffs, James and Edith Martin, for certain medical expenses. A complaint was originally filed in state court but defendant removed the case to this court pursuant to 28 U.S.C. § 1441, on the ground that the plan at issue is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., (ERISA). Both parties have now moved for summary judgment pursuant to Fed.R.Civ.P. 56.

## I.  FACTUAL BACKGROUND

The parties agree upon all pertinent facts relating to this action. Plaintiffs, James Martin and his wife Edith, are beneficiaries under a health benefit plan provided to James by his employer, Exotic Metals, a subsidiary of Masco Industries. Edith apparently suffered considerable pain and discomfort resulting from bilateral macromastia, the condition of oversized breasts,[1] and three physicians agreed that breast reduction surgery was the proper remedy for her condition. (Plaintiff's Motion for Summary Judgment Exhibit E). The plan administrator warned plaintiffs that such treatment was not covered by James' health benefit plan (Affidavit of Carmen Bieniek; Defendant's Motion for Summary Judgment Exhibit B). Plaintiffs, however, contending that the treatment was "medically neces-

---

1.  Dorland's Illustrated Medical Dictionary 901    (Twenty–Fifth Ed.1974).

sary" and therefore covered under the terms of the plan, went ahead with the surgery at Southside hospital in Pittsburgh from May 29 to May 30, 1987.

Defendant refused to reimburse the Martins. After an elaborate and unavailing series of internal appeals, plaintiffs filed suit in state court seeking to recover all or part of the $5,907.61 cost of Edith's treatment. Defendant removed to this court on the ground that the plan at issue is an employee welfare benefit plan under 29 U.S.C. § 1002(1). Once in federal court, defendant immediately moved to dismiss the action on the ground that the Masco Plan rather than Masco Industries, should be the named defendant. By stipulation, the Martins then amended their complaint to name the plan as defendant and ground their claim on their rights under ERISA, 29 U.S.C. § 1132.

## II. SUMMARY JUDGMENT

On a motion for summary judgment, this court evaluates "whether there is any need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If no such issue is present, then "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56 is intended to implement the rights of litigants to demonstrate prior to trial that claims "have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Accordingly, while a court must view the evidence in the light most favorable to the non-moving party, *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983), mere speculation or conjecture will not preclude summary judgment. Thus, the nonmovant may satisfy his burden of production using affidavits, depositions, admissions, or answers to interrogatories, but he may not rely solely on allegations in the

pleadings. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2727 (Supp.1987).

## III. DISCUSSION

### A. Standard of Judicial Review

The issue at bar is not whether Edith's treatment was medically necessary; defendants have not challenged plaintiffs on this matter. Rather, at issue is the plan administrator's determination that breast reduction surgery is not covered regardless of medical necessity.

Defendants argue that this court should scrutinize the plan administrator's decision solely for arbitrariness and caprice—that if the decision is not entirely unreasonable I must let it stand. The Martins' position is unclear. They state that they "agree that the Court's review ... is limited to deciding whether the decision of the plan administrator was arbitrary and capricious." (Plaintiff's Motion at ¶ 17) The Court, however, will address the plaintiffs argument, made elsewhere, that decision should be evaluated de novo, "and not [under th]e arbitrary and capricious standard of review." (Plaintiff's Brief at 7).

In *Firestone Tire & Rubber, Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court established the proper standard of review of claims denials in ERISA cases. The Court rejected the rigid importation of the arbitrary and capricious standard from the Labor Management Relations Act (LMRA) to ERISA. Rather, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. 109 S.Ct. at 956. After *Bruch*, de novo review is the starting point or default position—unless the plan is shown to confer discretion upon the administrator, the de novo standard will be applied.[2]

---

**2.** It is unnecessary to address plaintiffs' further argument that a conflict of interest warrants the

de novo standard because that standard applies regardless of whether "the administrator or fi-

*Bruch*, however, did not address the question of how the extent of discretion conferred is to be ascertained. See *Lowry v. Bankers Life and Casualty*, 871 F.2d 522, 524 n. 5 (5th Cir.1989). ERISA analysis is instructed by standard principles of trust law, *Bruch*, supra 109 S.Ct. at 955–56, which in turn teach that whether the terms of a trust confer discretion upon an administrator is a question of the intent of the creators. See Restatement (SECOND) of Trusts § comment j (1959); *In re Miller's Estate*, 230 Cal.App.2d 888, 906–09, 41 Cal.Rptr. 410 (1964). Thus, courts might resolve any ambiguity concerning the extent of discretion conferred "in light of all the circumstances and such other evidence of the intention of the settlor." *Bruch*, 109 S.Ct. at 956–57 (quoting Restatement § 4, Comment d).

Rather than inquire into such matters, however, courts generally deduce the proper standard of review from the language of a plan as a matter of law. They hold that unless a plan makes an express or clear grant of discretion, the proper standard of review is de novo. See e.g., *Moon v. American Home Assurance Co.*, 888 F.2d 86, 88–89 (11th Cir.1989) (other circuit courts uniformly based deferential review "upon *express language* of the ERISA plan before them"); *Boyd v. Trustees of The United Mineworkers Health and Retirement Funds*, 873 F.2d 57, 59 (4th Cir.1989) ("no question" that there is discretionary authority); *De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1187 (4th Cir.1989) (authority "need only appear on the face of the plan"); *Baxter v. Lynn*, 886 F.2d 182, 188 (8th Cir.1989) (no provision "specifically" conferring the power); *Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546 (6th Cir. 1989). Cf. *Baker v. Big Star Division of the Grand Union Co.*, 893 F.2d 288, 291 n. 4, 292 (11th Cir.1989) (in discussing respondent's brief the court noted that ' "[n]ot only did the Supreme Court's opinion in *Bruch* not turn on the word 'expressly,' Justice O'Connor's opinion nowhere made use of the term 'expressly.' " ').

duciary is operating under a possible or actual

■ The Third Circuit has never specifically decided "whether *Bruch* requires de novo review unless a reviewing court determines as a matter of law that the terms of a plan grant discretionary authority to a plan administrator or fiduciary [or instead] allows a reviewing court to resolve questions of fact in determining the appropriate standard of review." *Lowry*, 871 F.2d at 525 n. 5. Cf. *Anderson v. Pittsburgh–Des Moines Corp.*, 893 F.2d 638, 639 (3d Cir. 1989). I find no reason, however, to depart from the approach used by other circuits. Requiring a full-fledged factual inquiry into the parties' intent simply to determine the standard of review is likely to be cumbersome. More importantly, this burden will fall squarely upon persons challenging denials of benefits, and as such would be contrary to the purposes underlying a statute designed to protect and promote the rights of employees. *Brown*, supra at 550; *Firestone* 109 S.Ct. at 955. Thus, it is entirely consistent with ERISA, even if inconsistent with trust law, to require the plan to make abundantly clear any grant of discretion rather than requiring the employee to engage in burdensome litigation over ambiguous or subtle terms.

Of course, there are "no magic words," *DeNobel*, 885 F.2d 1187, that conclusively establish interpretive power in an administrator. Instead, in order to warrant the deferential review of an arbitrary and capricious standard, a plan must, on its face, manifest a clear and unequivocal intention to commit a matter to an administrator's discretion.

■ In the instant case, the plan's language does not permit of any indisputable conclusions. The defense points to only one provision in arguing that the plan at issue commits interpretive discretion to the administration:

> "The Company has established a Benefits Committee to review any appeals of denied claims in a fair and thorough manner. The Benefits Committee has the authority to make the final decision on your claim if it has been appealed." (Plaintiff's Brief at 7; Plan at 138).

conflict of interest." *Bruch*, at 956.

This passage may, as defendant suggests, indicate the parties' intent to commit all issues to the discretion of the Committee and the administrator. Placing final authority in a decision-maker, however, is not necessarily instructive on the question of how far a decision-maker may wander in drawing its conclusions or making its inferences. See *Sisters of the Third Order of St. Francis v. Swedishamerican Group Health Benefit Trust,* 901 F.2d 1369, 1371 (7th Cir.1990). In *Wallace v. Firestone Tire & Rubber,* 882 F.2d 1327 (8th Cir. 1989) the court of appeals quoted the Supreme Court in stating that "[i]f a plan does 'not give the employer or administrator discretionary *or final* authority to construe uncertain terms,'" review should be de novo. Id. at 1329 (emphasis added) quoting *Bruch,* 109 S.Ct. at 955. That passage from *Bruch,* however, described the state of affairs before ERISA. This court believes that the purposes of ERISA would be ill-served by a construction of *Bruch* that allows the application of deferential review merely because a body is set up to make "final" decisions regarding the plan. See *Baxter,* 886 F.2d at 188; but see *Boyd,* 873 F.2d at 59. Within the plan mechanism itself, some office must necessarily be the "final" arbiter of disputed claims. Surely, the quoted passage is evidence of the parties intention to consign this matter to the committee's discretion. It is not sufficient evidence, however, to support such a conclusion as a matter of law. It may well have been the intent of the parties for the Committee to act without any interpretative discretion at all. Because defendants have failed to muster sufficient evidence to show a clear and unequivocal intention to commit the interpretation to the administrator's discretion, this court will review the decision to deny benefits to Edith Martin, de novo.

B.   Terms In Dispute

█   Employing the de novo standard, I am "bound by the provisions of the doc-uments establishing an employee benefit plan 'without deferring to either party's interpretation.'" *Brown,* 876 F.2d at 550 (quoting *Firestone,* 109 S.Ct. at 955). In other words, the instant dispute is to be approached just as any other question of contract interpretation—this court seeks to enforce the parties' intent. However, "judges [are not] psychics ... [and we must, therefore,] eschew the ideal of ascertaining the parties' subjective intent and instead bind the parties by the objective manifestations of their intent." *Mellon Bank v. AETNA Business Credit,* 619 F.2d 1001, 1008 (3d Cir.1980); *Cury v. Colonial Life Insurance Co. of America,* 737 F.Supp. 847, 853 (E.D.Pa.1990). Thus, the first task of this court is to determine, as a matter of law, whether the terms at issue are ambiguous, and if they are not, to give effect to their meaning. *Kroblin Refrigerated Serv's v. Pitterich,* 805 F.2d 96, 101–02 (3d Cir.1986); *Burnham v. Guardian Life Ins. Co.,* 873 F.2d 486, 489 (1st Cir. 1989) ("straightforward language in an ERISA plan should be given its natural meaning").

The plan in the instant case could hardly be more clear in its exclusion of the coverage sought by the plaintiff.[3] (The Plan is set forth in full at exhibit A attached to Defendant's motion). The Martins point to a general provision at page 86 stating that medically necessary surgery is covered. Defendant, however, convincingly argues that this provision is taken out of context, that four full pages detailing the types of surgery not covered—even if medically necessary—immediately follow the brief introductory language relied upon by the plaintiffs. On page 89, "breast reduction or enlargement" is marked as an uncovered surgery. Defendant also points to page 117 titled "WHAT IS NOT COVERED BY THIS PLAN?" which again lists breast reduction and enlargement. The Martins respond by arguing that the exclusions on page 89 and 117 are in the context of

---

**3.** Because the terms are not ambiguous I need not inquire into whether the developing federal common law of ERISA should incorporate the rule that ambiguities in insurance contracts are to be resolved in favor of the insured. See, *Standard Venetian Blind Co. v. American Empire Ins.,* 469 A.2d 563, 566 (1983).

cosmetic surgery, and are not meant to exclude medically necessary procedures.

This court finds plaintiff's proffered construction of the terms to be meritless. A contextual argument has some initial appeal because one could hardly believe a medical plan would exclude coverage for reconstructive plastic surgery or similar medically necessary procedures. As the defendant points out, however, the plan expressly addresses this concern by listing reconstructive surgery which is covered. Rather than being ambiguous, the plan goes into particularly specific detail. Both page 89 and 117 indicate that coverage is provided for plastic surgery "to correct deformities ... as a result of an illness or injury which occurred while the individual was eligible for benefits from this employer" as well as for "correction of congenital defects" and for "scar revision." In fact, plaintiff initially sought reimbursement from the administrator on the grounds that Edith's condition was a congenital defect. (Defendant's exhibits B, G).[4] Accordingly, plaintiff's argument that the pages excluding breast reduction deal solely with cosmetic surgery and do not contemplate or address medically necessary treatments is wholly without merit. No matter what the standard of review or rule of construction, plaintiff cannot manufacture an ambiguity here. It is plain that coverage of breast reduction surgery is reserved for major medical necessity and was never meant to provide reimbursement for the relief of discomfort plaintiff undertook. Based on the foregoing Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

---

**4.** The Martins abandoned this argument during the internal review process and do not press it in the current action.