**Andrew M. DUTKA, Plaintiff,**

v.

**EMPLOYERS HEALTH INSURANCE COMPANY, a foreign corporation, Defendant.**

**No. 90–CV–73257–DT.**

United States District Court, E.D. Michigan, S.D.

April 17, 1991.

Thomas G. McHugh, Detroit, Mich., for plaintiff.

Kathleen S. Hall, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

### I. INTRODUCTION

Plaintiff filed suit in the Circuit Court of Macomb County, Michigan for claims arising out of defendant's refusal to pay benefits under an alleged group health insurance policy. Specifically, plaintiff averred state law claims for breach of contract and for violations of various provisions of the Michigan Unfair Trade Practices Act. Plaintiff seeks monetary relief. Although plaintiff's complaint purported to raise only state law causes of action, defendant removed this case to federal court under 28 U.S.C. § 1441(b) based on the alleged existence of an Employee Welfare Benefit Plan established pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, and the assertion that plaintiff's averments amounted to claims for benefits under such Plan.[1]

This matter is before the Court on defendant's motion for dismissal and/or summary judgment. Plaintiff filed a timely response, and both parties have fully briefed the relevant issues. Pursuant to E.D.Mich. Local R. 17($l$)(2), the Court decides this matter without entertaining oral argument. Because the motion and briefs, in dealing

---

**1.** In *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Supreme Court held that state law claims falling within the scope of § 502(a)(1)(B) of ERISA raise federal questions for purposes of establishing—even on removal—federal subject matter jurisdiction.

with substantive issues, inadvertently raise questions of jurisdiction, the Court, *sua sponte*, considers herein whether its continued exercise of jurisdiction over the subject matter of plaintiff's complaint is proper.

After reviewing the motion, briefs and file in this case, the Court finds that no ERISA Plan exists as defined by the statute; therefore, plaintiff's claims do not raise federal questions under ERISA. Because the Court is not presented with a federal question, it lacks jurisdiction over the subject matter of plaintiff's complaint. Accordingly, this case is remanded to the state court from which it was removed.

## II. BACKGROUND

On June 12, 1989, acting on behalf of his employer T & T Service, Inc., plaintiff Andrew Dutka submitted an application for a health insurance policy to defendant, Employer's Health Insurance Company, in order to provide health insurance coverage for himself and for other employees of T & T Service Center, Inc. Plaintiff's application was accompanied by his personal check for $156.00 as payment for the first month's premium. Dutka is both owner and employee of T & T Service Center. The employer group application contained the following language:

> WE may require an employee ... to submit Evidence of Insurability based upon OUR standard underwriting practice. INSURANCE COVERAGE WILL NOT BE EFFECTIVE UNTIL WE APPROVE THE EVIDENCE OF INSURABILITY. *WE have the right to decline coverage based upon the Evidence of Insurability on any employee. ...*
> YOU, the Employer, understand and agree that the first month's estimated premium and fully completed enrollment information for all eligible persons requesting insurance coverage must be submitted with this Application BEFORE action is taken on the Application. *Insurance coverage is NOT in effect un-*

*less and until YOU receive written notification from US.* If this Application is declined, WE will return the premium deposit submitted with the Application. (Emphasis added).

On June 19, 1989 defendant also received employee group enrollment forms submitted by four individual employees of T & T Service Center who sought coverage. This group of four employees included plaintiff. Of the four employees seeking coverage, two sought life insurance only, while plaintiff and a fellow employee, George Kalinovik, sought both medical coverage and life insurance coverage. The employee group enrollment forms stated:

> I hereby agree that *no insurance will be effective until the date specified by the company on the certificate of insurance after this application has been accepted.* (Emphasis added).

The group application forms specifically noted that coverage would not be effective until and unless the applicant received written notification to that effect.

In reviewing the group application, and according to standard underwriting guidelines, defendant determined that Kalinovik's apparent obesity and high blood pressure presented an uninsurable risk. Accordingly, defendant decided to decline coverage for Kalinovik. This decision reduced the number of qualified medical applicants from two, the required minimum for coverage under the group coverage policy, to one. The lack of the required two medical applicants alone was sufficient to deny the application for coverage submitted by T & T Services.

On July 16, 1989, plaintiff suffered an accident that resulted in hospitalization and treatment for serious injuries. On July 25, 1989, defendant was informed of plaintiff's injury.[2] According to the standard underwriting practices used by defendant, plaintiff's injuries suffered prior to an issuance

---

**2.** The parties dispute the exact timing of defendant's decision to decline coverage based on the risks presented by Kalinovik. Plaintiff contends that defendant declined to offer coverage to Kalinovik after being informed of plaintiff's injury. Defendant argues that it received information of plaintiff's injury after deciding to decline coverage for Kalinovik. As revealed below, this is a non-material question of fact.

of coverage rendered him an unacceptable risk.

Based on defendant's determinations that both Dutka and Kalinovik presented unacceptable risks, defendant rejected the application submitted by T & T Service Center. Defendant's letter of rejection was accompanied by a check refunding plaintiff's payment of the first month's premium. The letter specifically stated that the application had been "closed ... because of the decline of George Kalinovik and Andrew Dutka; there for [sic] the group no longer meets the minimum participation of two medical lives for group coverage."

Plaintiff filed suit on September 25, 1990. Count I of the complaint alleges that "plaintiff and defendant did have a contract which required defendant to provide health insurance coverage with respect to personal injuries sustained by members of plaintiff's group, including your plaintiff herein." In count II of the complaint, plaintiff alleges, *inter alia*, that defendant violated various provisions of the Uniform Trade Practices Act by making alleged misrepresentations, failed to pay benefits, and discriminated against plaintiff by claiming that the application had been "withdrawn."

## III. PARTIES' CONTENTIONS

### A. *Defendant*

In its motion for summary judgment, defendant argues that plaintiff's claims for coverage relate to a claim under an Employee Welfare Benefit Plan governed and defined by ERISA. Defendant correctly notes that when a plan participant sues to recover benefits under an Employee Welfare Benefit Plan, the cause of action falls exclusively within the civil enforcement provisions of ERISA and all state claims relating thereto are preempted by ERISA. Defendant also argues that plaintiff's claims for violations of Michigan's Unfair Trade Practices Act are similarly subject to ERISA preemption.

Next, defendant argues that because no group insurance policy was ever executed, plaintiff was not entitled to receive benefits and is therefore not a "participant" entitled to bring an action under the civil enforcement provisions of ERISA. Both of defendant's claims presuppose the existence of a Plan under 29 U.S.C. § 1003.

### B. *Plaintiff*

Plaintiff argues that ERISA does not preempt his claims because there is no Employee Welfare Benefit Plan at issue. In this respect, plaintiff argues that his employer, T & T Service Center, did not establish or maintain any plan, fund or program that could rise to the level of an Employee Welfare Benefit Plan.

## IV. DISCUSSION

A claim relating to ERISA must involve an employee benefit plan established or maintained by an employer or an employee organization engaged in commerce or in any industry or activity affecting commerce. 29 U.S.C. § 1003(a). This statutory provision limits the district court's jurisdiction to only claims involving employee benefit plans. Because plaintiff disputes the existence of an employee benefit plan, the Court's point of inquiry is necessarily jurisdictional.

ERISA regulates two distinct types of employee benefit plans: Pension Plans and Welfare Benefit Plans. This case involves questions regarding the existence of the latter only. Employee Welfare Benefit Plans are defined in 29 U.S.C. § 1002(1):

(1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal ser-

vices, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

In determining whether an employer has established an Employee Welfare Benefit Plan, the Court must determine "whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Brown v. Ampco–Pittsburgh Corp.*, 876 F.2d 546 (6th Cir.1989) (quoting *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982)). Under the *Brown* analysis, this Court concludes that the instant case does not involve a claim for benefits under an Employee Welfare Benefit Plan.

Defendant has failed to proffer evidence from which a reasonable person could ascertain the intended benefits of any alleged Employee Welfare Benefit Plan established by plaintiff's employer. While the cover sheet to the Employer Group Application does list life, medical, and dental insurance as options under the group policy, the cover sheet itself does not provide any detailed discussion of the scope of the benefits to be provided under the policy. Instead, the cover sheet to the group application merely provides information regarding certain conditions preceding coverage.

Defendant has not offered any evidence from which a reasonable person could ascertain the procedures for receiving benefits under an alleged Employee Welfare Benefit Plan established by plaintiff's employer. While defendant suggests that the cover sheet to the Employer Group Application completed by plaintiff provides the information necessary to conclude that a plan does in fact exist, defendant's motion and brief do not explicitly or implicitly indicate the procedures by which the intended beneficiaries of the alleged Employee Welfare Benefit Plan would receive benefits.

Lastly, defendant has failed to provide evidence from which a reasonable person could ascertain the alleged plan's source of financing. Courts have noted that

[t]he purchase of insurance does not conclusively establish a plan, fund, or program, but the purchase is evidence of the establishment of a plan, fund or program; the purchase of a policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established.

*Memorial Hospital System v. Northbrook Life Insurance Co.*, 904 F.2d 236, 242 (5th Cir.1990) (quoting *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982) (*en banc*)). In this case, plaintiff's employer has not *purchased* a policy to provide medical benefits for its employees. Although the allegations in plaintiff's complaint coupled with the application for a group policy evidence an attempt by the employer to secure a source of financing, the employer's attempt failed after defendant rejected the application. This very point is conceded by defendant, which argues that it rightfully rejected plaintiff's employer's application for group health insurance benefits. Defendant has offered no evidence of a viable source of financing for the alleged Employee Welfare Benefit Plan.

Thus, under the *Brown* analysis, this Court concludes that the circumstances surrounding this case would not allow a reasonable person to ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits. As a result, the Court concludes that the averments in plaintiff's complaint do not relate to an ERISA Employee Welfare Benefit Plan.

## V. CONCLUSION

The dispute in this case does not involve an Employee Welfare Benefit Plan as defined by cases interpreting ERISA. Therefore, defendant's defense of ERISA preemption—the basis upon which this case was removed—lacks merit.

There being no federal question before the Court, the Court holds that it lacks jurisdiction over the subject matter of plaintiff's complaint. Accordingly, the

Court REMANDS this case to the state court from which it was removed.[3]

IT IS SO ORDERED.

---

**3.** "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).