**Lauriane L. LUCAS, Plaintiff,**

v.

**The CHALLENGE MACHINERY COM-PANY SALARIED AND NON–UNION EMPLOYEES' RETIREMENT PLAN, Defendant.**

**No. 1:00CV121.**

United States District Court,
W.D. Michigan,
Southern Division.

March 14, 2001.

John P. Halloran, McCroskey, Feldman, Cochrane & Brock, PC, Muskegon, MI, for plaintiff.

Mark S. Allard, Varnum, Riddering, Schmidt & Howlett, LLP, Grand Rapids, MI, for defendant.

## OPINION

HILLMAN, Senior District Judge.

This is an action for disability benefits under an employee benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The matter presently is before the court on the parties' cross motions for judgment on the administrative record.[1] For the reasons that follow, defendant's motion (docket #17) is **GRANTED** and plaintiff's motion (docket #16) is **DENIED.**

## I.

Plaintiff Lauriane L. Lucas is a former employee of the Challenge Machinery Company. Lucas was employed by Challenge Machinery in the Personnel/Human Resources Department from 1971–1993. During her employment, Lucas was a participant in defendant Challenge Machinery Company Salaried and Non–Union Employees' Retirement Plan ("the Plan"). The Plan includes a disability pension benefit.

Plaintiff voluntarily quit her position at Challenge Machinery effective June 22, 1993. Over five years later, plaintiff was determined disabled by the Social Security Administration as of October 1998 because of end-stage renal disease, and she began to receive Social Security benefits in April 1999. On April 1, 1999, plaintiff sought disability benefits under the Plan. (Admin.R. p. 83.) The administrator of the Plan denied benefits on September 14, 1999, determining that because plaintiff was not a current employee at the time she became disabled, she was not qualified to receive a disability pension under the Plan. (Admin. R. pp. 53–54.)

In a letter dated December 28, 1999, plaintiff advised the Plan administrator that she intended to "grieve" the determination that she was not eligible for disability pension benefits. (Admin.R. p. 52.) In that letter, plaintiff advised that during her employment, she had been told that, consistent with the administrator's denial of benefits to her, the Plan was being administered to exclude participants from benefits if they were not active employees

---

1. Although plaintiff's motion (docket #16) is entitled "Plaintiff's Cross–Motion for Summary Judgment," in accordance with *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 619 (6th Cir.1998), determination of an ERISA challenge to a denial of benefits generally is not evaluated in the posture of a motion for summary judgment under FED. R.Civ.P. 56. Instead, an ERISA claim is properly reviewed for judgment on the administrative record.

at the time they became disabled. Plaintiff stated, however, that a member of the Pension Board, Michael O. Anthes, had previously informed the Pension Board that this interpretation of the Plan was not clear in the Plan document. In addition, she stated that she was aware of one individual, Phillip Nass, who was awarded a disability pension despite the fact that he was not an active employee at the time he became disabled.

On December 27, 1999, plaintiff's attorney, John Halloran, wrote to Britt Cary, a trustee of the Plan, in a formal appeal of the decision to deny benefits. (Admin.R. pp. 55–56.) In that letter, Halloran sought a full and fair review of the determination. As part of that review, Halloran asked that the administrative record include, in addition to plaintiff's letter, the Social Security award, and the Plan. In addition, Halloran requested the opportunity to depose Michael Anthes and Phillip Nass, as well as the pension administrator and relevant current and past pension board members. Further, Halloran asked for employment and pension records of all persons applying for disability pension retirement in the last ten years. *Id.*

On February 7, 2000, Cary sent plaintiff a determination of her appeal, again denying benefits. That determination was reached without granting depositions and discovery requested by plaintiff's attorney. The decision repeated the previously stated reasons for the denying benefits. Plaintiff then filed the instant action for benefits under ERISA.

## II.

### A. *Procedural Posture*

■ Pursuant to recent Sixth Circuit authority, ERISA benefit actions are substantially limited, not full trial proceedings. Ordinarily, in reviewing an administrator's benefit determination, a district court is limited to reviewing the evidence contained in the administrative record. *See Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 618 (6th Cir.1998); *Perry v. Simplicity Engineering,* 900 F.2d 963 (6th Cir. 1990).

> The only exception to the above principle of not receiving new evidence at the district court level arises when consideration that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.

*Wilkins,* 150 F.3d at 618 (citing *VanderKlok v. Provident Life and Accident Ins. Co. Inc.,* 956 F.2d 610, 617 (6th Cir.1992) (insured permitted to present new evidence because the administrator failed to provide insured with proper notice as required by the administrative hearing procedures)).

In an earlier decision (docket ## 14, 15), this court granted defendant's motion for an order protecting defendant from supplemental discovery. The court concluded that plaintiff had failed to show entitlement to additional discovery under *Wilkins.* Accordingly, the court determined that the court's review of the administrator's determination was limited to the evidence contained in the administrative record.

The parties have now filed cross motions for judgment on the administrative record.

### B. *Standard of Review*

■ The Supreme Court has held that federal courts should apply a *de novo* standard of review to claims for benefits under ERISA unless the plan grants the administrator full discretionary authority to interpret the terms of the plan and determine eligibility. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109

S.Ct. 948, 103 L.Ed.2d 80 (1989). In order to insulate its decision from *de novo* review, the "grant of discretion to the administrator" must be "clear." *Brown v. Ampco–Pittsburgh Corp.*, 876 F.2d 546, 550 (6th Cir.1989); *see also Johnson v. Eaton Corp.*, 970 F.2d 1569, 1571 (6th Cir.1992); *Perry*, 900 F.2d at 965. If the plan confers discretionary authority on the plan administrator to determine eligibility for benefits or to construe the terms of the plan, this court will apply an arbitrary and capricious standard of review. *Bruch*, 489 U.S. at 115, 109 S.Ct. 948; *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir.1998). Under the arbitrary and capricious standard, a plan administrator's benefit determination will be upheld if it is "rational in light of the plan's provisions." *University Hosps. v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000).

■ In the instant case, the Plan provides:

The Administrator shall have authority to determine any and all questions which may arise as to the eligibility of any Employee to become a Participant or as to his rights as a Participant.

(Plan § 8.2(b), Admin. Record, p. CMC 000033.) This language confers unqualifiedly broad discretion upon the administrator. On the basis of the clear Plan language, therefore, this court will apply the arbitrary and capricious standard of review. Accordingly, the court must consider whether the administrator's interpretation of the Plan documents is rational in light of the Plan provisions.

### C. *Analysis of Plan*

As previously noted, in rejecting plaintiff's claim for disability benefits, the Plan administrator advised plaintiff that disability retirement benefits were available only for persons becoming disabled while employed by Challenge Machinery. Plaintiff contends that the administrator's interpretation of the Plan incorporates terms and requirements not contained in the Plan language and is therefore inconsistent with the Plan.

Under the Plan, eligibility for disability retirement is set forth in section 3.3:

*Disability Retirement* —A Participant who shall become totally and permanently disabled after having reached age forty (40) and completed at least ten (10) years of Credited Service shall be eligible for a Total and Permanent Disability Retirement Benefit as provided in Article IV upon application therefor approved by the Administrator.

(Admin. Record, Ex. A. p. CMC00014.) The Plan defines a "Participant" as

any Employee participating hereunder. Certain employees became Participants under the Plan as it existed prior to May 1, 1976 and will continue as Participants hereunder after that date, if they were participating in the Plan on April 30, 1976. Each other Employee will become a Participant on May 1, 1976, or the first day thereafter, when he has completed at least 1,000 Hours of Service in any consecutive 12 month period, commencing with his date of hire or any anniversary thereof.

(Admin. Record, Ex. A. p. CMC000005.) The Plan further defines "Employee":

"Employee" means any person in the employ of the Employer who is not covered under a union-negotiated pension plan to which the Company contributes.

(Admin. Record Ex. A. p. CMC000004.) Finally, the Plan defines "Employer" at section 1.1:

"Employer" or "Company" means the Challenge Machinery Company, a Michigan corporation, its successors and assigns.

(Admin. Record Ex. A. p. CMC000004.) Because only "Participants" as defined by the Plan are eligible for disability retirement benefits, and because a "Participant" under the Plan must be an "Employee," the administrator has interpreted the Plan to allow disability retirement benefits only to those who are "Employees" under the Plan on the date they become totally and permanently disabled.

 Plaintiff contends that such interpretation is not rational for several reasons. First, plaintiff argues that under ERISA, the term "participant" is defined as "any employee or former employee ... who is or may become eligible to receive a benefit of any type ...." 29 U.S.C. § 1002(7). She therefore contends that the definition of "Participant" in the Plan documents is contrary to law.

I disagree. The definitions provided under ERISA control the meaning of the statutory provisions and rights. They do not purport to provide mandatory language for individual Plan documents or to supercede definitions provided in those documents. Plaintiff cites no cases supporting her claim that ERISA definitions trump the definitions contained in Plan documents themselves.

Second, plaintiff contends that the administrator's interpretation of "Participant" under the disability retirement eligibility provision of section 3.3 is inconsistent with the administrator's interpretation of that term for purposes of three other sections of the Plan: Section 3.1 ("Normal Retirement"), Section 3.2 ("Early Retirement"), and Section 3.4 ("Vested Deferred Retirement"). Plaintiff argues that because the administrator, in denying plaintiff disability retirement benefits, expressly advised her that she remained eligible for a vested deferred retirement benefit when she reached the qualifying age, the administrator impermissibly gave inconsistent meaning to the term "Participant" in different sections of the Plan.

Again, however, I disagree. Section 3.4 of the Plan provides a definition of eligibility for Vested Deferred Retirement:

*Vested Deferred Retirement* —A participant will be fully vested in his accrued benefit after he has completed five (5) years of Continuous Service with the Company. A Participant will be eligible for a deferred vested benefit if he:

(a) has completed at least five (5) years of Continuous Service with the Company;

(b) has terminated employment; and

(c) is not receiving or entitled to receive any other benefit under the Plan.

(Admin. Record Ex. A p. CMC000014.) Thereafter, the Plan defines when such accrued deferred benefits will commence:

4.9 *Commencement of Vested Deferred Retirement Benefits* —

(a) Vested Deferred Retirement Benefits shall be payable to a *former Participant* entitled thereto commencing as of his Normal Retirement Date; and payments shall commence with the month following the month in which application is made to the Administrator, with a single retroactive payment for the months beginning with the month as of which the benefit first became payable, and ending with the month in which application is made ...

(b) A *former Participant* eligible for Vested Deferred Retirement Benefits, may elect, by an instrument in writing delivered to the Administrator, to have his benefits commence as of the first day of any month at or after the date as of which he would have been eligible to receive Immediate Early Benefits hereunder based upon his service and at-

tained age at the date of his application; such benefit will equal the actuarial equivalent as of the date his benefits commence his Vested Deferred Benefit payable at his Normal Retirement Date, and such benefit will begin as of the first day of the month following the date application is made.

(Admin. Record p. CMC000019–20.) (Emphasis added.) As is apparent from the quoted language, a participant becomes eligible for a vested deferred retirement— that is, retirement eligibility vests—at the time the participant terminates employment as an employee of the company. The benefit, however, commences when a *former* participant reaches either the normal or early retirement ages as defined elsewhere in the Plan. As a result, the Plan, by its terms, distinguishes between disability retirement and vested deferred retirement. The administrator's interpretation therefore does not impermissibly apply an inconsistent meaning to the term "Participant" as used in the two sections of the Plan.

Moreover, the provisions governing eligibility for both "Normal Retirement" and "Early Retirement" do not inconsistently interpret the meaning of the word "Participant." Eligibility for "Normal Retirement" is defined as follows:

> A Participant who on his termination of employment with the Company on or after the Effective Date has attained his Normal Retirement Age shall be eligible for a Normal Retirement Benefit as provided in Article IV upon application therefor approved by the Administrator.

(Plan § 3.1, Admin. Record p. CMC000013.) The term governing eligibility for Early Retirement provides:

> A participant who on his termination of employment with the Company has either:

> (a) Attained at least sixty (60) years of age and completed at least five (5) years of Continuous Service,

> (b) Attained at least age fifty-eight (58) years of age and completed at least thirty (30) years of Credited Service, shall be eligible for an Early Retirement Benefit as provided in Article IV upon application therefor approved by the Administrator.

(Plan § 3.4, Admin. Record p. CMC 000013–14.) Both provisions, like the disability retirement eligibility set forth in section 3.3, contemplate that the participant becomes eligible on the date he terminates employment with the company. Nothing about these provisions conflicts with the use of the word "Participant" as defined in the Plan as a current "Employee." Moreover, as with the disability retirement, plaintiff is not eligible for either normal or early retirement and will not become eligible upon attaining the requisite retirement age because her employment will not terminate at or after the time she reaches that age. Instead, plaintiff, as a former participant, eventually will become entitled to receive a vested deferred retirement benefit, precisely as the administrator advised her.

When supporting his interpretation of the Plan language, the administrator referred plaintiff to the 1997 Summary Plan Description as it defines eligibility for disability benefits:

### Disability Benefit

Age 40 and 10 or more years of credited service;

Your employment with the Company terminates due to the disability; and

You must have a physical or mental condition that lasts at least 26 consecutive weeks and is expected to be permanent and prevents you from satisfactorily performing your usual duties for the

Company or the duties of any position the Company makes available to you and for which you are qualified by reason of your training, education or experience. (Admin. Record p. CMC000077.) Plaintiff disputes the propriety of the administrator's reliance on the 1997 Summary Plan Description. Plaintiff contends that if the Plan does not include a requirement of current employment, the Summary Plan Description may not add such a requirement to limit benefit availability. Plaintiff also argues that because the Summary Plan Description was not adopted until 1997, it is not applicable because plaintiff was last employed by the company in 1993.

Because I previously have concluded that the Plan language contemplates that disability pensions will be available only to employees who become disabled while current employees of the company, I need not fully resolve either of plaintiff's contentions about the Summary Plan Description. I note, however, that the Summary Plan Description clearly is consistent with the administrator's interpretation and with the language of the Plan itself. Whether the court considers the Summary Plan Description or not, the administrator's interpretation of the Plan is rational.

Finally, I observe that a further provision of the Plan also supports the administrator's interpretation. In section 1.8, the Plan defines "Permanent Disability":

> "Permanent Disability" means presumably permanent incapacity occurring after the Effective Date which continues for a period of at least twenty-six (26) weeks, and has resulted in the Employee's being unable to engage in any regular gainful employment or occupation by reason of any medically demonstrable physical or mental condition, excluding, however, any incapacity which (1) was contracted, suffered or incurred while the Employee was engaged in a felonious enterprise, or (2) consists of chronic alcoholism or addition to narcotics, or (3) results from intentional self-inflicted injury, or (4) results from service with the Armed Forces of any country. The determination of a physician selected by the Administrator of the physical or mental incapacity or both of a Participant to perform his duties as an Employee shall be conclusive on all parties.

(Plan § 1.8, Admin. Record p. CMC000005.) As the definition makes clear, disability is defined in three places in relation to an individual's status as "Employee" as defined by the Plan. The last sentence, in particular, gives conclusive effect to the opinion of an expert designated by the administrator with respect to the claimant's ability to perform her duties as an "Employee" of the company. The sentence and the paragraph as a whole both serve to reinforce an interpretation of the Plan documents as affording disability retirement benefits only to employees who become disabled while employed by the company.

Reviewed as a whole, the Plan is consistent with the administrator's denial of benefits. The action taken by the administrator in denying disability benefits to plaintiff therefore is "rational in light of the [P]lan's provisions." *Emerson*, 202 F.3d at 846.

## III.

For the stated reasons, I conclude that the administrator's determination denying plaintiff disability retirement benefits is not arbitrary and capricious. Accordingly, defendant's motion for judgment on the administrative record (docket # 17) is **GRANTED.** Plaintiff's motion for summary judgment (docket # 16) is **DENIED** and plaintiff's action for benefits is **DISMISSED WITH PREJUDICE.**

### ORDER

In accordance with the opinion filed this date,

**IT IS ORDERED** that defendant's motion for judgment on the administrative record (docket #17) is **GRANTED.** Plaintiff's motion for summary judgment (docket #16) is **DENIED** and plaintiff's action for benefits is **DISMISSED WITH PREJUDICE.**