EICHNER et al., Appellants,

v.

CELTIC LIFE INSURANCE COMPANY, Appellee.

[Cite as *Eichner v. Celtic Life Ins. Co.* (1991), 73 Ohio App.3d 281.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–1188.

Decided April 25, 1991.

*Clark, Perdue & Roberts Co., L.P.A.*, and *Edward L. Clark*, for appellants.

*Vorys, Sater, Seymour & Pease, Alan T. Radnor* and *Tony C. Merry*, for appellee.

McCormac, Judge.

Plaintiffs-appellants, Richard H. Eichner and Dorothy A. Eichner, appeal the judgment of the Franklin County Court of Common Pleas which dismissed their claims against defendant-appellee, Celtic Life Insurance Company, for tortious denial and rescission of insurance benefits, and for negligent and intentional infliction of emotional distress. Appellants' claims arose from appellee's failure to pay medical benefits pursuant to a group health insurance plan provided appellant, Richard Eichner, by his employer, Maple Grove Dairy, Inc. ("Maple Dairy"). The basis for appellee's denial of appellant's insurance claim for expenses resulting from his heart surgery was appellant's alleged omission on his insurance application of a pre-existing vision disorder. The trial court's dismissal of appellants' complaint was premised on the preemption clause of the Employee Retirement Income Security Act ("ERISA"), Section 1144, Title 29, U.S.Code. Appellants' single assignment of error states:

"The trial court committed reversible error in granting Defendant's motion to dismiss because the small group health and disability insurance coverage provided to Plaintiff Richard Eichner by his employer is not, as a matter of law, an 'employee welfare benefit plan' (also referred to as an 'ERISA plan') as defined by 29 U.S.C. 1002(1) and interpreted by the courts. Therefore, since the insurance coverage is not an ERISA plan, Plaintiffs' state-law claims are not preempted by ERISA (Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001 *et seq.*)

"As part of the trial court's error, the trial court erroneously found that 29 C.F.R. 2510.3–1(j) defined the sole criteria by which such insurance coverage is exempted from the requirements of ERISA."

The policy behind Congress' enactment of ERISA's comprehensive and uniform regulation of employee benefit plans was to prevent employer abuse in the denial of benefits under the plans, and to guarantee the safety and well-being of all employee beneficiaries of private retirement and welfare benefit plans. Section 1001, Title 29, U.S.Code. This policy was accomplished in part by ERISA's jurisdictional provision, Section 1132(e), Title 29, U.S.Code, which

for the most part vests exclusive subject matter jurisdiction of actions against ERISA plans in the federal district courts, as well as by ERISA's broad preemption statute, Section 1144, Title 29, U.S.Code, which states, in relevant part:

"§ 1144.  Other laws

"(a) Supersedure;  effective date

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title * * *.

"(b) Construction and application

"* * *

"(2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."

The foregoing statute has been interpreted by the United States Supreme Court as preempting state court jurisdiction over common-law claims for relief, such as appellants' tort claims, if they relate to an employee benefit plan.  *Pilot Life Ins. Co. v. Dedeaux* (1987), 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39.  The issue on appeal is whether the trial court had sufficient evidence to conclude that the group health insurance plan provided to appellant as an employee of Maple Dairy was an "employee benefit plan" as defined by ERISA, and that ERISA's preemption clause prevented the common pleas court from assuming jurisdiction because the asserted claims related to that plan.

As relevant herein, the propriety of the trial court's application of ERISA's jurisdiction provision and preemption clause depends primarily on whether Maple Dairy's group health insurance plan was properly labeled an "employee welfare benefit plan" by the trial court.  Section 1002(1), Title 29, U.S.Code, defines the prerequisites of an "employee welfare benefit plan" as follows:

"§ 1002.  Definitions

"For purposes of this subchapter:

"(1) The terms 'employee welfare benefit plan' and 'welfare plan' mean *any plan*, fund, or program which was heretofore or is hereafter *established or maintained by an employer* or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained *for the purpose of providing for its participants or their beneficiaries*, through the purchase of insurance or otherwise, *(A) medical, surgical, or*

*hospital care or benefits,* or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions)." (Emphasis added.)

It is undisputed that Maple Dairy's insurance plan provided medical benefits to its employee-participants. The debate centers on whether the group insurance plan was properly considered a "welfare plan * * * established or maintained by an employer."

In *Brown v. Ampco–Pittsburgh Corp.* (C.A.6, 1989), 876 F.2d 546, at 551, the Sixth Circuit Court of Appeals adopted the criteria formerly announced in *Donovan v. Dillingham* (C.A.11, 1982), 688 F.2d 1367, at 1373, for determining whether an employer has established an employee benefit plan. Specifically, a court must determine from the surrounding circumstances whether a reasonable person could ascertain the intended benefits, the beneficiaries, the source of financing, and procedures for receiving benefits. *Id.*

▮▮▮ Application of the factors set forth in *Brown* necessitates the conclusion that Maple Dairy established and thereafter maintained an "employee welfare benefit plan" when it purchased a group health insurance plan from appellee. As previously stated, the intended benefits were medical expenses provided through the purchase of insurance which meet the definitional requirement of Section 1002(1), Title 29, U.S.Code. The intended beneficiaries were clearly Maple Dairy's employees. The affidavit of Maple Dairy's president reveals that he contracted with appellee for the group insurance plan and that the premiums were paid by the employer, Maple Dairy. Hence, the plan was not created or funded by individual employees or by an entrepreneurial business. Finally, Maple Dairy's agreement to adopt appellee's procedure for processing claims as the method for receiving benefits under the plan satisfies *Brown's* final criterion for the establishment of an ERISA plan.

Despite appellants' reliance on *Wayne Chemical, Inc. v. Columbus Agency Serv. Corp.* (C.A.7, 1977), 567 F.2d 692, neither the United States Supreme Court cases interpreting ERISA, nor the statutes or regulations promulgated thereunder, require an employer to specifically state in a written employee welfare benefit plan, or in an enumerated administrative scheme, his specific intention to conform with the requirements of ERISA. In *Fort Halifax Packing Co., Inc. v. Coyne* (1987), 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1, the United States Supreme Court held that litigation in state court to specifically enforce a Maine statute, which required employers upon a plant closing to

provide a one-time severance payment to certain employees, was not preempted by ERISA because the statutory benefits did not "relate to" any "employee benefit plan." The court's opinion focused on the different meanings of the terms "employee benefit plan" and employee "benefit" due to ERISA's express limitation of the applicability of its preemption statute to "plans," rather than to all employee benefits. The court recognized in its ascertainment of the distinct meaning of "employee benefit plan" that the maintenance of an employer-established plan necessarily includes the adoption of a set of administrative practices to maintain the plan. *Id.,* 482 U.S. at 11-12, 107 S.Ct. at 2217-2218, 96 L.Ed.2d at 10. The recognition that an "employee benefit plan" necessarily involves the creation by the employer of an administrative scheme to maintain the plan led the court to deduce the absence of an ERISA "plan" in *Fort Halifax* from the fact that an ongoing administrative scheme was unnecessary to ensure that Maine's employers made the one-time severance payment pursuant to the statute. Without an ERISA plan, the court could not apply ERISA's preemption statute to bar litigation to enforce the statutory benefits scheme in state court.

The trial court's determination in the instant case that Maple Dairy established and, thereafter, maintained an ERISA plan is not in conflict with the ruling in *Fort Halifax.* The court in *Fort Halifax* said that if employee benefits are of the type that require ongoing administrative responsibilities, then there is an ERISA plan to trigger the preemption statute. *Id.* The court did not rule that the employer himself must perform the administrative functions according to an enumerated administrative plan and we reject appellants' attempt to construe such a mandate from the court's opinion. Rather, *Fort Halifax* teaches that the nature of the employer-provided benefits determines whether an ERISA plan exists, not the identity of the administrator of the plan.

Thus, we disagree with appellants' reliance on *Kanakis v. MONY* (Feb. 28, 1990), Cal.Super.Ct. No. 441754, unreported (appellants' supplemental authority). In *Kanakis,* the court declined to declare the existence of an ERISA plan from the employer's purchase of an employee insurance plan because the court found that the employer himself did not actively participate in administration of the plan. The employer's responsibilities were to ensure the accurate completion by employees of insurance applications, pay premiums, and refer employer's questions to the insurer. Otherwise, the administration of the plan remained with the insurer, MONY. Thus, the court reasoned that the plan was not subject to abuse by the individual employer, or by an employer trust, the regulatory concerns ERISA was intended to prevent. Consequently, it narrowly interpreted the Supreme Court's definition in *Fort Halifax, supra,* of employee "plan" to exclude any plan that involves adminis-

trative activity by someone other than the employer because the plan could not be abused by the individual employer.

This interpretation of ERISA is inconsistent with *Fort Halifax, supra,* as well as the plain meaning of ERISA and the regulations promulgated thereunder.

Moreover, the court in *Donovan v. Dillingham, supra,* specifically stated that "some essentials of a plan * * * can be adopted, explicitly or implicitly, from sources outside the plan * * *, *e.g.,* an insurance company's procedure for processing claims * * *." *Id.,* 688 F.2d at 1373. This statement is entirely consistent with ERISA's definition of "employer" as including "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." Section 1002(5), Title 29, U.S.Code. Thus, the potential of benefit plan abuse by a third party authorized by the actual employer to administer the plan was also prevented by Congress' inclusion of third-party administrators in ERISA's definition of "employer."

The evidence submitted herein sufficiently demonstrated to the trial court that Maple Dairy intended to create an ERISA plan and, hence, established an administrative scheme to maintain the plan. The Participating Employer Application signed by Maple Dairy's president specifically stated in Section III–B that he would comply with ERISA, which is some evidence of Maple Dairy's intent to create an ERISA plan. Furthermore, in Section III–C, Maple Dairy established an administrative scheme via its contract with a third-party administrator, Dun & Bradstreet Plan Services. Finally, insurance benefits, unlike the severance payments at issue in *Fort Halifax, supra,* are of the type that require ongoing benefits administration and are thus the subject of an ERISA plan.

More persuasive on the issue of whether appellant's employer established and maintained an "employee welfare benefit plan" through the purchase of group insurance is Section 2510.3–1(j), Title 29, C.F.R., which also defines the term "employee welfare benefit plan," albeit through the exclusion of certain employer practices. The regulation lists four requirements necessary to exempt a group employee insurance program from ERISA by stating:

"(j) *Certain group or group-type insurance programs.* For purposes of Title I of the Act and this chapter, the terms 'employee welfare benefit plan' and 'welfare plan' shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

"(1) No contributions are made by an employer or employee organization;

"(2) Participation in the program is completely voluntary for employees or members;

"(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

"(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs."

Appellant conceded that the first requirement was unfulfilled due to Maple Dairy's payment of insurance premiums. Appellant's argument to the trial court that satisfaction of the remaining criteria required an exclusion of Maple Dairy's plan from ERISA's mandates was properly rejected due to the express wording of the law which requires that all four conditions be fulfilled. Furthermore, as the trial court correctly determined, Maple Dairy's plan also failed the second and third requirements of the regulation because Maple Dairy's contract in 1988 with Celtic to revise the existing employee benefit plan rendered appellant's participation in the program involuntary and could be considered an endorsement of the program by the employer.

Since appellant failed to satisfy the four exclusion requirements of Section 2510.3–1(j), Title 29, C.F.R., in regard to Maple Dairy's employee welfare benefit plan, appellant could not escape application of ERISA's preemption clause to his state court claims if those claims were "related to" Maple Dairy's ERISA plan.

In *Fort Halifax, supra,* 482 U.S. at 8, 107 S.Ct. at 2215, 96 L.Ed.2d at 7, the court reiterated that the words "relate to" should be construed expansively to include any law or claim which has a connection or reference to an employee benefit plan. All of appellants' state court claims were directly connected to the denial of benefits provided by Maple Dairy's ERISA plan. Thus, they were subject to the exclusive subject matter jurisdiction of the federal district court. *Richland Hosp., Inc. v. Ralyon* (1987), 33 Ohio St.3d 87, at 90, 516 N.E.2d 1236, at 1239. Appellants do not contend that their state court claims were saved from preemption by Section 1144(b)(2)(A), Title 29, U.S.Code. Since appellants have not established a basis for relief from preemption, their appeal is not well founded.

Appellants' assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BOWMAN, P.J., and WHITESIDE, J., concur.