The STATE ex rel. VAUGHN INDUSTRIES, INC., Appellant,

v.

OHIO BUREAU OF EMPLOYMENT SERVICES et al., Appellees.

[Cite as *State ex rel. Vaughn Industries, Inc. v. Ohio
Bur. of Emp. Serv.* (1997), 119 Ohio App.3d 779.]

Court of Appeals of Ohio,
Third District, Wyandot County.

No. 16–96–10.

Decided May 29, 1997.

*Ross, Brittain, Schonberg & Goldstein Co., L.P.A., Alan G. Ross* and *Brian A. Paton*; *Steve C. Shuff & Associates* and *Steve C. Shuff*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Michael D. Allen*, Assistant Attorney General, for appellee.

---

EVANS, Presiding Judge.

This appeal is brought by Vaughn Industries, Inc. ("Vaughn"), from a judgment of the Court of Common Pleas of Wyandot County overruling Vaughn's motion for summary judgment and granting a motion for summary judgment filed by the Ohio Bureau of Employment Services ("OBES").

On or about June 15, 1995, and pursuant to R.C. 4115.132, the Ohio Department of Industrial Relations ("ODIR"), predecessor to the current administrative agency, OBES, issued three subpoenas *duces tecum* on Vaughn Industries, Inc. in connection with an investigation ODIR had initiated concerning Vaughn's compliance with the prevailing wage law in Ohio. The subpoenas requested specific payroll and prevailing wage records as well as other documentation relating to Vaughn's work on three public improvement projects.

On July 26, 1995, Vaughn filed a complaint in the Court of Common Pleas of Wyandot County for declaratory judgment and injunctive relief, seeking a decision by the court that the three subpoenas *duces tecum* served on Vaughn by ODIR were void and unenforceable and requesting an order enjoining enforcement of the subpoenas. Vaughn contended, among other things,[1] that the subpoenas *duces tecum* should be declared void since Ohio's prevailing wage law, R.C. 4115.03 *et seq.* and Ohio Adm.Code 4101:9–4–01 *et seq.* (wherein ODIR is granted authority to subpoena, investigate, and enforce prevailing wage legislation) is preempted by the Employee Retirement Income Security Act of 1974, ("ERISA"), Section 1001 *et seq.*, Title 29, U.S. Code. Vaughn also argued that the prevailing wage law violated Section 1983, Title 42, U.S. Code, and requested attorney fees.

Pursuant to legislative enactment, the ODIR was succeeded by the OBES in the fall of 1995, and OBES was accordingly substituted as the respondent in the present case. As the litigation proceeded, OBES filed a motion for dismissal, which was later denied by the trial court on December 15, 1995. OBES also filed an answer denying Vaughn's claims and counterclaimed for recovery of underpaid prevailing wages plus penalties on December 29, 1995. The discovery process

---

1. Vaughn's complaint listed five claims for relief; only the two mentioned in this opinion are relevant in this appeal.

proceeded on the federal preemption issues and on June 21, 1996, the parties submitted cross-motions for summary judgment. These motions were later followed by response memoranda filed by the parties.

On October 1, 1996, the trial court issued its decision granting summary judgment to OBES and overruling Vaughn's request for the same. The court based its decision on the fact that Vaughn was not required under Ohio law to establish a separate benefit plan or apprenticeship plan in order to be in compliance with the prevailing wage statutes. The court found that the prevailing wage law is not specifically designed to affect ERISA employee benefit plans, since a contractor could be in compliance with the prevailing wage law even if he had no employee benefit or apprenticeship plans at all. Rather, any connection the prevailing wage law has with ERISA benefit plans was found by the court to be too tenuous and remote to trigger preemption.

Vaughn now appeals to this court, asserting the following assignment of error:

"The trial court erred in granting appellees' motion for summary judgment and overruling appellant's motion for summary judgment with respect to appellant's first two claims for relief."

R.C. Chapter 4115 and the regulations contained in Ohio Adm.Code 4101:9–4–01 *et seq.* establish what is referred to as the "prevailing wage law" in Ohio. These statutes and regulations set forth the obligations of public authorities in regard to the prevailing wage rate when taking bids and contracting for the construction of public works projects. According to R.C. 4115.03 *et seq.,* when a public authority contracts for the construction or reconstruction of a public improvement, the contractor or subcontractor performing the work may not pay their employees less than a "prevailing wage." See R.C. 4115.031.

The prevailing wages to be paid to laborers for a legal day's work on public works projects are determined by the prevailing rate of wages paid under the collective bargaining agreements in effect at the time of the contract and in the locality where the work is to be performed. R.C. 4115.05; Ohio Adm.Code 4101:9–4–09(A). Ohio's prevailing wage is described in R.C. 4115.03(E) as the sum of the following:

"(1) The basic hourly rate of pay;

"(2) The rate of contribution irrevocably made by a contractor or subcontractor to a trustee or to a third person pursuant to a fund, plan, or program;

"(3) The rate of costs to the contractor or subcontractor which may be reasonably anticipated in providing * * * fringe benefits to laborers and mechanics pursuant to an enforceable commitment to carry out a financially responsible plan or program which was communicated in writing to the laborers and mechanics affected[.]"

The obligation of a contractor or subcontractor to make payments in accordance with the prevailing wage may be discharged by making the payments to workers in cash, by making contributions described in R.C. 4115.03(E), "or any combination thereof, where the aggregate of any such payments, contributions, and costs is not less than" the set rate of prevailing wages. R.C. 4115.031.

Pursuant to authority granted to the OBES in R.C. 4115.132, the present case involves an attempt by the administration to subpoena records kept by Vaughn that would demonstrate compliance with the prevailing wage law on the work Vaughn performed on various public improvement projects. According to R.C. 4115.07, contractors and subcontractors on public work projects are required to keep records evidencing their compliance with the prevailing wage law available for inspection by any authorized representative of the contracting authority, including the OBES. In an effort not to comply with these subpoenas, Vaughn has challenged the legality of the prevailing wage laws, claiming that the prevailing wage law in Ohio is preempted by ERISA.

In 1974, Congress enacted ERISA to provide a uniform federal regulation of employee benefit plans. A comprehensive remedial statute, ERISA is designed to "promote the interest of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490, 497. At the same time, ERISA protects employers by " 'eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans.' " *Id.* at 99, 103 S.Ct. at 2901, 77 L.E.2d at 502, quoting 120 Cong. Rec. 29933 (1974) (statement of Sen. Williams).

To further these goals, Congress included within ERISA a preemption clause that states, "[T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws [2] insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. Section 1144(a), Title 29, U.S. Code.

It is this preemption clause found in ERISA that Vaughn now claims preempts Ohio's prevailing wage law. However, as noted above, to fall under the ERISA preemption clause, a state law must relate to an ERISA benefit plan. Section 1002(1), Title 29, U.S. Code defines an "employee welfare benefit plan" under ERISA as follows:

"[A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the

---

2. The term "State laws" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." Section 1144(c)(1), Title 29, U.S. Code.

purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions)."

The Sixth Circuit Court of Appeals has expounded on the criteria necessary to determine whether an employer has established an employee welfare plan under ERISA in *Brown v. Ampco–Pittsburgh Corp.* (C.A.6, 1989), 876 F.2d 546, 551, citing *Donovan v. Dillingham* (C.A.11, 1982), 688 F.2d 1367, 1373. In *Brown,* the court held that a reasonable individual should be able to ascertain from the surrounding circumstances the intended benefits and beneficiaries of the plan, the source of financing, and the procedures for receiving benefits. See *Eichner v. Celtic Life Ins. Co.* (1991), 73 Ohio App.3d 281, 284, 596 N.E.2d 1124, 1126.

Although there is no requirement in ERISA that such a welfare benefit plan be in writing, it is up to Vaughn in this case to demonstrate, through some form of evidence, the existence and operation of a ERISA welfare benefit plan in order to call into play the ERISA statute and supersedure provisions. Without evidence that Vaughn had a ERISA benefit plan at the time it performed the prevailing wage projects now subject to investigation, there exists no actual controversy requiring a preemption analysis between ERISA and Ohio's prevailing wage law.

Our review of the record reveals no evidence to demonstrate that Vaughn had a ERISA employee benefit plan at work to create a controversy involving the ERISA statute and Ohio's prevailing wage law. The only evidence in the record that in any way relates to an employee welfare plan of Vaughn's is a brief, two-paragraph notice entitled "Addendum No. 2" to Vaughn's Company Policy[3] dated May 22, 1984, which reads as follows:

"Any and all employees working on prevailing wage jobs, where our fringe benefit package does not meet required amounts by the state, shall have a credit of money set aside for payment of medical bills for individual employee. The credits will be set aside for only medical bills.

"This is to serve as a written notice to all employees that the plan has been instituted and credits will start accumulating 4–1–84. All employees shall turn medical bills into the office for payment and/or a report on their remaining credits, if any. All credits shall remain in force until such time the employee has terminated with the company."

While it may be assumed that Vaughn has set up this fringe benefit plan for its employees, the scope of the intended benefits is unclear as is the source of

---

3. Vaughn's Company Policy does not appear in the record.

financing for the plan. A reasonable person is left to speculate about the extent of medical coverage being provided, the amount of "credit" extended to each employee, and the source of financing of the credits. For example, the above notice speaks in the vague terms of a "credit of money" which the company will set aside for each employee. It is not known whether this credit of money is the difference between the prevailing wage and the amount employees are paid through a combination of wages and fringe benefits on prevailing wage projects or whether it is some other amount, flat rate, or nominal sum derived from an unknown formula. The amount of credit and the source of the credit financing are left a mystery. Furthermore, the term "medical bills," which is used to describe the intended coverage of the plan, is undefined and ambiguous. A reasonable person would not know whether such things as common medical prescriptions or hospital stays are covered under the term "medical bills." Given these omissions and the absence of any other information in the record, we cannot find that Vaughn has demonstrated the existence of a ERISA employee benefit plan so as to invoke the ERISA statute, as was its burden when filing for summary judgment on the premise of ERISA's supersedure clause. Simply put, preemption is not a proper claim since ERISA has not been implicated in the present case.

When reviewing a trial court's decision to grant a party's motion for summary judgment we are guided by the three-part test announced by the Supreme Court of Ohio in *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, which provides:

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor."

Since Vaughn has failed to establish an actual controversy involving the ERISA statute in this case, we find no genuine issue as to any material fact involved in Vaughn's claim for preemption. As a result of this finding, any further claims by Vaughn for a violation of its civil rights under Section 1983, Title 42, U.S. Code, resulting from the alleged conflict between ERISA and Ohio's prevailing wage law is rendered moot. Appellant's assignment of error is overruled.

Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment affirmed.*

Hadley and Shaw, JJ., concur.